John H. Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, California 94109
Telephone: (415) 561-9601
Facsimile:  (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Izaak D. Schwaiger, SBN 267888
Adams Fietz
1510 4th Street
Santa Rosa, CA  95404
Telephone: (707) 999-9999
Facsimile: (707) 595-4473
E-mail: Izaak@adamsfietz.com

Attorneys for the Plaintiff
ESA WORTH

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESA WORTH, | Case No.  CV-14-05519 SI |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | **[Civil L.R. 7-3(a), 7-4]** |
| COUNTY OF SONOMA, STEVE FREITAS, BRIAN GALLOWAY, SCOTT RIVERS, EDUARDO ESPINO, FRANCISCO FLORES, MICHAEL SKINNER, and DOES 1-25, inclusive. | Date:    March 20, 2015
Time:    11:00 a.m.
Place:   19th Floor, Courtroom 10
Judge: The Honorable Susan Illston |
| Defendants. | |

## I. INTRODUCTION

Federal Rule of Civil Procedure 8 requires notice pleading with few exceptions, e.g., fraud and conspiracy claims.  Unlike most use-of-force cases where the underlying facts are dispute, in this case there is a 29-minute videotape that captures most of the events relating to the allegations of excessive force.  The content of a videotape can be relied upon and incorporated into in a complaint. *Van Buskirk v Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). In fact, videotaped evidence can be the basis for granting or denying motions for summary judgment in cases alleging police misconduct. *Scott v Harris*, 550 U.S. 372 (2007). Defendants' claim that plaintiff has not sufficiently alleged facts to support his constitutional claims under the 4th and 14th Amendments is incredulous. Here, the plaintiff will ask this Court to grant partial summary judgment as to his Fourth Amendment claim based primarily on the videotaped evidence.

There seems to be some confusion regarding the plaintiff's Fourteenth Amendment claim. Although it includes allegations of (1) purpose to harm and (2) deliberate indifference, it does not relate to a failure to provide medical treatment.  Once the torture stopped, as demonstrated by the video, plaintiff was taken by ambulance to a hospital and provided medical treatment as opposed to being dumped in a cell and neglected. Rather, plaintiff alleges that the use of force was also in violation of the Fourteenth Amendment as being a punitive measure. Unlike the Fourth Amendment claim, this requires proof of intent.  *A.D. v Markgraf*, 712 F.3d 446 (9th Cir, 2013). The Fourteenth Amendment often applies to custodial situations as well as the use of force in non-custodial situations.

As to allegations against Sheriff Freitas as an individual for supervisorial liability, plaintiff concedes that the allegations could be set forth with more specificity by being parsed out as a separate cause of action. Plaintiff did not intend to allege that Sheriff Freitas participated in the incident that is videotaped.  Instead, his liability as a supervisor can be based on conduct when he is not at the scene. *Menotti v City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005).  Plaintiff requests leave to amend, if necessary, to more artfully allege his supervisory claims against the Sheriff.

As to municipal liability, the complaint specifically alleges alternative theories of liability well recognized by the Ninth Circuit. Predictably, plaintiff will need to conduct discovery to support these claims—he does not have the County of Sonoma's evidence at his disposal, yet. Although the complaint's allegations put the County of Sonoma on notice of the claims, if necessary, plaintiff also requests leave to amend at to his *Monell* claims.

Finally, the plaintiff is perplexed by the motion to dismiss his request for injunctive relief. While courts have been reluctant to impose injunctive relief in situations where police encounter potentially armed and dangerous suspects on the street, those same policy reasons do not apply to custodial situations inside the walls of a jail or prison. At the pleading stage it would be inappropriate for this court to dismiss a request for injunctive relief, especially given the videotape coupled with evidence that the Sheriff's Office officially stated, in a 26-page review, that the incident was within policy.

## II.   STATEMENT OF FACTS

On January 2, 2013 plaintiff Esa Wroth was arrested for a DUI and transported to the Sonoma County Jail in handcuffs and without incident. (Comp. ¶ 15). During the booking process plaintiff's head was knocked against a concrete wall, and his body thrown to the concrete floor while plaintiff's hands were cuffed behind his back. (*Id.*) Plaintiff was then punched and kicked as he lay on the ground. (*Id.*)

What happened next was recorded in a video. Wroth submitted that video and incorporated it by reference to his complaint.[1] (*Id.*, and **Exhibit A**). Defendants Gallloway, Rivers, Espino, Flores and Skinner collectively, and acting in concert, proceeded to wrench the plaintiffs arms out of their sockets and knee him in the face, as Wroth lay face down and handcuffed. (Comp. ¶ 15). Wroth was also subjected to additional torture by being Tased over twenty (20) times in less than twenty-nine (29) minutes. (Comp. ¶ 15, **Exhibit A**).

---

[1] If a picture is worth a thousand words, this video is worth at least a million. According to the United States Supreme Court, a videotape may "speak for itself" to prevent a trier of fact from relying on an incredible version of facts that constitute "visible fiction." *Scott v. Harris*, 550 U.S. 372, 379 fn. 5, 380-81 (2007).

Under all the circumstances presented at the booking area January 2, 2013, an objectively reasonable officer would have known that the use of force, including a Taser, upon the plaintiff was excessive and could have led to serious injury and/or death. (Comp. ¶ 24). Defendants knocked Wroth unconscious. (Comp. ¶ 16). Wroth also suffered bruises, lacerations, abrasions, puncture wounds, swelling and burns to his body. (*Id.*). Defendants impacted two Taser barbs in Wroth's body which had to be surgically removed. (*Id.*). Wroth's body is covered in scars from the multiple Taser deployments, his shoulders now regularly become dislocated, and he suffers permanent nerve damage in both of his hands.  (*Id.*) This was done for the purpose of causing pain and serious injury unrelated to any legitimate law enforcement purpose. (Comp. ¶ 15, 28, **Exhibit A**.).

Defendant [Sheriff] Steve Freitas encouraged the conduct alleged herein through the training and supervision of his subordinates including a failure to investigate, or a failure to impartially investigate and discipline, his jail staff when they abused and injured citizens without legal cause. . (Comp. ¶ 17, 32).  The acts or omissions alleged herein regarding the use of excessive force were, upon information and belief, caused by (1) inadequate training, supervision, and discipline of officers by Steve Freitas and the County of Sonoma and/or (2) official policies, practices or customs of the County of Sonoma regarding the use of force, including the use of Tasers; and/or (3) the deliberate indifference of the County of Sonoma to the use of excessive force. (Compl. ¶ 32).  Sheriff Freitas also condoned and ratified the conduct alleged herein as the final decision maker and policy maker for the County of Sonoma. (Comp. ¶ 17) He had final policymaking authority for the County of Sonoma.  He knew of and specifically approved of the acts alleged herein. (Comp. ¶ 36)

Plaintiff believes the facts and video incorporated by reference are more than adequate. However, if the Court is inclined to disagree, Wroth seeks leave to amend described below.

### III.    ARGUMENT

#### A.    Standards on a motion to dismiss are lenient.

A dismissal motion should be denied if subject complaint contains factual allegations adequate to give defendants fair notice of the pending claims, and, enables them to defend themselves if the complaint's allegations, taken as true, plausibly suggest entitlement to relief. *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011), *rehearing en banc denied,* 659 F.3d 850 (9th Cir. 2011). When ruling on a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). In addition, the Court must draw inferences in favor of the plaintiff. complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996). Dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). The issue is whether the plaintiff is entitled to offer evidence to support the claims, not whether based on his complaint's allegations he will prevail as a matter of law. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).

This Court may consider the content of Wroth's complaint *and* the attached video, **Exhibit A**, incorporated by reference to it. (*See*, *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002) (explaining that "[u]nder the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.")).

Denial of a request for leave to amend is "strictly" reviewed in light of the strong policy permitting amendment. *See Plumeau v. School Dist. No. 40*, 130 F.3d 432, 439 (9th Cir. 1997); Pierce, 76 F.3d at 1043. Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *See Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

**B.     The Fourth Amendment claims for excessive force as against individuals including Sheriff Freitas are sufficiently pled in the first cause of action.**

Defendants question which defendants are being sued under the Fourth Amendment first cause of action. To clarify, all individually named defendants are those liable under this cause of action. Defendants correctly state that the *Monell* causes of action apply to the County of Sonoma. Next, defendants contend insufficient facts are pled for supervisory liability.

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, **or** control of his subordinates, [**or**] for **his acquiescence in the constitutional deprivations** of which the complaint is made, **or** for **conduct that showed a reckless or callous indifference to the rights of others**." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir.2005) (citations omitted*)* (emphasis added*)*. *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir.2011) (plaintiff's allegations that supervisory defendant knew of conditions in jail of his subordinates' culpable acts and took no action were sufficient to state claim of supervisory liability for deliberate indifference), cert. denied, 132 S. Ct. 2101 (2012); Northern District Model Jury Inst. 9.3 (modified 10/2013).

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. Amend IV.; *see also, Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995); *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994). The Ninth Circuit Model Instruction states:

> Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.
> In determining whether the officer[s] used excessive force in this case, consider all of the circumstances known to the officer[s] on the scene, including:
>
>     1. The severity of the crime or other circumstances to which the officer[s] [was] [were] responding;
>
>     2. Whether the plaintiff posed an immediate threat to the safety of the officer[s] or to others;
>
>     3. Whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;
>
>     4. The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary;

> 5. The type and amount of force used;
>
> 6. The availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]
>
> [7. *Other factors particular to the case.*]

Ninth Circuit Model Civil Jury Instruction, 9.22.

Here, the complaint describes how the defendants used unreasonable and reckless force including knocking Wroth's head into a concrete wall and throwing his body to a concrete floor. The video also shows in graphic detail what occurred next, which the complaint describes as follows: Defendants, while Wroth was face-down and handcuffed, used a Taser over twenty times including impacting barbs into his body, wrenched Wroth's arms out of their sockets, kneed him in the face, and rendered him unconscious.

The complaint further alleges that Sheriff Freitas failed to properly train, supervise or control his subordinates, and, his acquiescence in the constitutional deprivations by virtue of his encouragement and condoning and ratifying these acts. (¶¶ 32, 36) Plaintiff intends to conduct discovery, including other uses of a Taser, to obtain additional evidentiary support for these allegations .

Should this Court be inclined to rule the complaint's facts as pled are insufficient, plaintiff seeks leave to amend his complaint to include additional facts; for example, the Sonoma County Sheriff's Office has published statements that this incident was "within policy." Reasonable inferences from these statements are that Sheriff Freitas authorized and/or ratified these publications.

*First*, the Sonoma County Sheriff's Office published a report that provides as follows:

> After reviewing the reports relating to this incident, and the 29:04 video that captured a major portion of the encounter with Mr. Wroth during the booking process, I have formed the opinion that the **use of force used by all of the Correctional Deputies during this incident was within the policy of the Sonoma County Sheriff's Office. . .**

(Use of Review Report at page 21/26, Schwaiger Decl. **Exhibit 1**). (emphasis added)

*Second*, it was publically reported that Sonoma County Assistant Sheriff Randall Walker proclaimed: "It is his [Wroth's] fault. . . [because h]e is taking out the barbs. Breaking the wires.

1  At that point the Taser is no longer effective." (*Former Inmate Claims Deputies Beath Him With*
2  *Excessive Force; Tased Him 23 Times*, ABC13 Eyewitness News, available at
3  http://abc13.com/news/former-inmate-claims-deputies-tased-him-23-times-/404999/ as of
4  February 11, 2015, Schwaiger Decl. **Exhibit 2**).

Plaintiff could therefore allege these official, authorized statements support the allegation that the Sonoma County Sheriff's Office and Sheriff Freitas acquiesced in these constitutional deprivations and showed a reckless or callous indifference to the rights of others.

### C. Fourteenth Amendment claims for excessive force as against individuals are sufficiently pled in the second cause of action.

Defendants mischaracterize the plaintiff's Fourteenth Amendment claims as arising out of their failure to provide medical care. Rather this claim arises out the punitive use of force.

Under the Fourteenth Amendment, jailers may not use force against a pretrial detainees for the purpose of punishment. A use of force is punitive if it is not reasonably related to a legitimate governmental interest. Retribution and deterrence are not legitimate government purposes. *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535, 537-39 and 539 at FN. 20, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1440-41 (9th Cir.1991) (en banc).

The Fourteenth Amendment's "purpose to harm" test puts the officer's intent in dispute. *A.D. v Markgraf*, 712 F.3d 446 (9th Cir. 2013) (holding the law was clearly established in 1998 that a police officer who acts with a purpose to harm unrelated to a legitimate law enforcement objective violates the Fourteenth Amendment);  *See also, County of Sacramento v. Lewis*, 523 U.S. 833 (1998) and *Moreland v. Law Vegas Metro. Police Dept*., 159 F.3d 365 (9th Cir. 1998).

The video evidence is sufficient to support the allegation that the use of force was punitive and in violation of the Fourteenth Amendment.

### D. *Monell* liability is sufficiently pled.

Defendants correctly state there is no *Monell* liability against the individually named defendants. Rather, municipal-liability claims are only being pursued against the municipal defendant, the County of Sonoma. Although defendants believe that supervisorial liability is the

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

equivalent to *Monell* claims, they are mistaken. The supervisorial liability claims relate only to Sheriff Freitas. Plaintiff seeks leave to parse out Sheriff Freitas's liability from other officers' individual liability claims, and, the *Monell* claims. Similarly, if the Court believes plaintiff's allegations in the complaint should be amended on his training/policies/deliberate indifference and/or ratification third and fourth causes of action, plaintiff seeks leave to amend those as well.

As clearly set forth in the model Northern District jury instructions 9.4 through 9.7, municipal liability may be established by: (1) an official policy, practice or custom; (2) a final decision-maker's act; (3) ratification, and/or; (4) a failure to train. *City of Canton*, 489 U.S. 378, 389-90 (1989).  *See also, Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004); and *Price v. Sery*, 513 F.3d 962, 971-974 (9th Cir. 2008); *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690-91 (1978).

### 1. Municipal liability is sufficiently pled relating to the Fourth and Fourteenth Amendments in the third case of action for inadequate training, policies/customs and/or deliberate indifference.

Defendants rely on evidentiary standards, rather than pleading standards, to dismiss plaintiff's third case of action.[2] Here, the allegations are sufficient to put the defendants on notice of the underlying claims.

> 17.     Defendant Steve Freitas encouraged the conduct alleged herein through the training and supervision of his subordinates including a failure to investigate, or a failure to impartially investigate and discipline, his jail staff when they abused and injured citizens without legal cause. Sheriff Freitas also condoned and ratified the conduct alleged herein as the final decision maker and policy maker for the County of Sonoma.
> . . . .
> 32. The acts or omissions alleged herein regarding the use of excessive force were, upon information and belief, caused by (1) inadequate training, supervision, and discipline of officers by Steve Freitas and the County of Sonoma and/or (2) official policies, practices or customs of the County of Sonoma regarding the use of force, including the use of Tasers; and/or (3) the deliberate indifference of the County of Sonoma to the use of excessive force.

---

[2] The *Connick v. Thompson*, 131 S. Ct. 1350, 1355-1356 (2011) Court ruled on a post-trial (verdict of $14 million) motion based on a prosecutor's single *Brady* violation. The *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) court ruled on a summary-judgment motion.

Legally the inadequate training/policies/customs and deliberate indifference claims merge in the third case of action because of the ways in which municipal liability may be proved.

> *Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. **The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy**." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. I**n that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury**.

*City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989). (emphasis added)

In this case, it is unclear if the Sonoma County Sheriff failed in its training as to how to treat suspects who are handcuffed, and/or, how or when to implement the use of a Taser. Without additional discovery, the video (**Exhibit A** to the complaint) combined with the 26-page report claiming this incident was within policy (**Exhibit 1**) raises multiple inferences: (1) inadequate or inappropriate training on the use of force and the Taser caused the alleged violations; or, (2) the alleged conduct represents the *de facto* policy relating to the use of force and Tasers; or, (3) deliberate indifference was the moving force behind these violations. Therefore, the theories articulated in the third cause of action are sufficiently pled in the alternative.

At this stage of the pleading process, *before the parties have even disclosed Rule 26 information and documents*, it is premature to require plaintiff to prove his case. If this were a summary-judgment motion, plaintiff could seek a delay to do more discovery. But here discovery has not even begun. If the Court believes there are insufficient facts in the currently pled complaint as to Municipal or Supervisory liability, he seeks leave to amend the complaint.

### 2. Municipal liability is sufficiently pled relating to the Fourth and Fourteenth Amendments in the fourth cause of action for ratification.

Defendants rely on evidentiary rather than pleading standards to dismiss plaintiff's third case of action.[3] Here, the allegations are sufficient to put this defendant on notice of the underlying claims.

> 17. Defendant Steve Freitas encouraged the conduct alleged herein through the training and supervision of his subordinates including a failure to investigate, or a failure to impartially investigate and discipline, his jail staff when they abused and injured citizens without legal cause. Sheriff Freitas also condoned and ratified the conduct alleged herein as the final decision maker and policy maker for the County of Sonoma.
> . . . .
> 36. The acts or omissions alleged herein regarding the use of excessive force, upon information and belief, were ratified by defendant Steve Freitas. He had final policymaking authority for the County of Sonoma. He knew of and specifically approved of the acts alleged herein.

In order to prove ratification, plaintiff must establish the following facts by a preponderance of the evidence:

> 1. Gallloway, Rivers, Espino, Flores and Skinner acted under color of law;
> 2. The act[s] of Gallloway, Rivers, Espino, Flores and Skinner deprived the plaintiff of his rights under the Fourth and Fourteenth Amendments of the United States Constitution as explained in later instructions;
> 3. Sheriff Freitas acted under color of law;
> 4. Sheriff Freitas had final policymaking authority from the County of Sonoma concerning the act[s] of Gallloway, Rivers, Espino, Flores and Skinner; and
> 5. Sheriff Freitas ratified Gallloway, Rivers, Espino, Flores and Skinner's acts and the basis for them, that is, Sheriff Freitas knew of and specifically approved of their act[s].

Northern District Model Jury Instruction 9.6 [modified].

### E. Plaintiff's request for injunctive relief to remedy the unlawful practices herein is sufficiently pled.

Defendants contend that like the plaintiff in *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1982), who sought to eradicate the chokehold practices used by the Los Angeles Police Department, Wroth lacks standing to remedy the County of Sonoma's use of the Taser here.

At this preliminary juncture in this pleading practice, it would be premature to rule on

---

[3] The *Christie v. Iopa,* 176 F.3d 1231, 1234 (9th Cir. 1999*)* and *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) courts ruled on summary-judgment motions.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

1 injunctive relief absent any motion for injunctive relief. Additional discovery will determine 2 whether plaintiff will seek this relief.

## CONCLUSION

For the reasons set forth above, this Court should deny defendants' motion to dismiss in its entirety. Alternatively, plaintiff should be given leave to amend.

**DATED:** February 13, 2015                                           **SCOTT LAW FIRM**

                                                                       By:   /s/John Houston Scott
                                                                             JOHN HOUSTON SCOTT
                                                                             Attorneys for Plaintiff